IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2019 SEP 16 PM 12: 29
CLERK M. akin
SO. DIST. OF GA.

EDWIN MUNIZ,     *
       *
    Plaintiff,     *
       *
    v.     *     CV 117-074
       *
DYNAMIC SYSTEMS, INC.,     *
       *
    Defendant.     *

## O R D E R

Before the Court is Defendant's motion for summary judgment. (Doc. 33.) In this action, the Clerk of Court gave Plaintiff notice of the motion for summary judgment and informed him of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 34.) Thus, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

## I. BACKGROUND

Plaintiff Edwin Muniz ("Plaintiff") is Hispanic. (Def.'s St. of Mat. Facts, Doc. 33-2, at ¶ 1 (undisputed).) He is a journeyman pipefitter and member of the Plumbers and Pipefitters Union, Local Union 803. (Id. ¶ 2 (undisputed).) In 2015, Defendant Dynamic

Systems, Inc. ("Defendant") offered Plaintiff a job as an orbital welder at the Eli Lilly plant in Augusta, Georgia, which Plaintiff accepted. (Id. ¶ 3, (undisputed).) At all relevant times, foreman Troy Weiser ("Foreman Weiser") served as Plaintiff's supervisor on the project. (Id. ¶ 4 (undisputed).)

Two of Plaintiff's fellow crew members were Termonja Carlton and Ebony Parker, both African-American. (Id. ¶ 5 (undisputed); Pl.'s St. of Mat. Facts, Doc. 37-1, ¶¶ 7, 8 (undisputed).) Plaintiff, Mr. Carlton, and Mr. Parker were involved in two incidents on June 8, 2016, on the second floor of the project. (Def.'s St. of Mat. Facts, ¶¶ 5, 7 (undisputed).)

## A. Purge Cap Incident

The first incident primarily involved Plaintiff and Mr. Carlton. (Muniz Dep., Doc. 33-3, at 70-73; Weiser Dep., Doc. 33-4, at 42-47.) It is undisputed that, unbeknownst to Plaintiff, Mr. Carlton removed the purge cap from Plaintiff's weld to use on his own weld. (Muniz Dep., at 71; Weiser Dep., at 42, 44-45.) Plaintiff proceeded with the weld; however, the absence of the necessary cap damaged the weld. (Muniz Dep., at 71; Weiser Dep., at 42-43.) The Parties dispute the fallout from the weld damage, but both Parties acknowledge that Foreman Weiser witnessed the incident. (Def.'s St. of Mat. Facts, ¶ 6 (undisputed).)

According to Foreman Weiser, Mr. Carlton showed immediate contrition for his mistake and offered to correct the harm.

2

(Weiser Dep., at 43, 46.) Based upon Foreman Weiser's observation, he understood that the purge cap mishap was an accident. (Id. at 43-45.) Plaintiff tells a different story, and he testified that when he confronted Mr. Carlton about the missing weld cap, Mr. Carlton accosted him with racial slurs. (Muniz Dep., at 71.) Plaintiff states that he expressed concerns to Foreman Weiser regarding Foreman Weiser's failure to intervene in the incident. (Id. at 72.)

## B. Ladder Incident

Later the same day, the second altercation occurred involving Plaintiff and Mr. Parker. (Muniz Dep., at 73-74; Weiser Dep., at 48.) Again, Foreman Weiser witnessed the event. (Def.'s St. of Mat. Facts, ¶ 6 (undisputed).) Pursuant to Plaintiff's testimony, Mr. Parker was upset because Plaintiff chose to continue making his weld instead of helping with the cleanup and began directing racial slurs at Plaintiff. (Muniz Dep., at 73-74.) Mr. Parker then bumped Plaintiff's ladder with a vacuum cleaner.[1] (Id.;

---

[1] In his deposition, Foreman Weiser initially indicated that while Mr. Parker "was vacuuming up all of [Plaintiff]'s shavings, filings from the pump tubing, [Mr. Parker] bumped a six-foot ladder that [Plaintiff] was on." (Weiser Dep., at 48.) Later, Foreman Weiser testified Mr. Parker used a broom at the time:
> Q: And the reason that [Mr. Parker] was there was that he was cleaning up the shavings –
> A: Yes.
> Q: – is that right?
> A: Yes. Sweeping up.
> Q: What was he using?
> A: He was just using a broom.
> Q: What did – is it possible that he was using a vacuum?
> A: It's possible, but I was thinking about that. I don't think so at that point in time."

<u>Weiser Dep.</u>, at 48.) Foreman Weiser explained that, from his perspective, Mr. Parker did not contact the ladder intentionally. (Weiser Dep., at 56-57.) The Parties agree that an argument between Plaintiff and Mr. Parker ensued following the ladder incident. (Muniz Dep., at 74; Weiser Dep., at 48, 49-50.) Plaintiff again challenged the level of Foreman Weiser's intervention. (Muniz Dep., at 77; Weiser Dep., at 51.)

## C. Plaintiff's Termination

After the second incident within the same day, Foreman Weiser went to the project superintendent, Ron Gravely. (Def.'s St. of Mat. Facts, ¶ 7 (undisputed).) Because the project needed a welder on the first floor in a few days, the decision was made to move Plaintiff early to diffuse the mounting friction between Plaintiff, Mr. Carlton, and Mr. Parker. (Def.'s St. of Mat. Facts, ¶¶ 7-9 (undisputed).) The Parties agree that Defendant did not move Plaintiff as punishment. (Def.'s St. of Mat. Facts, ¶ 8 (undisputed).)

As Foreman Weiser recalls, although he informed Plaintiff that the move reflected the needs of the project, Plaintiff expressed that he felt the move was punishment. (Def.'s St. of

---

(Weiser Dep., at 55.) Although Foreman Weiser appears uncertain as to the tool Mr. Parker used to clean the shavings, the Parties do not dispute that Mr. Parker witnessed the incident. Because whether Mr. Parker utilized a broom or vacuum cleaner is irrelevant for the purpose of deciding the present motion, the Court assumes Mr. Parker used a vacuum cleaner.

Mat. Facts, ¶ 11 (undisputed); Weiser Dep., at 51.) The following morning, Foreman Weiser discovered that Plaintiff had removed a section of piping ("Fabrication") on the second floor. (Def.'s St. of Mat. Facts, ¶¶ 12, 13 (undisputed).)[2] Foreman Weiser did not observe Plaintiff remove the piping. (Pl.'s St. of Mat. Facts, ¶ 30 (undisputed).) Upon discovering the removed Fabrication, Foreman Weiser confronted Plaintiff, questioned why he removed the Fabrication, and ordered Plaintiff to restore it. (Def.'s St. of Mat. Facts, ¶ 14 (undisputed).)

Foreman Weiser interpreted Plaintiff's reaction as a dismissal of his instruction that Plaintiff repair the Fabrication. (Weiser Dep., at 35.) At that point, Foreman Weiser went to superintendent Robert Smith ("Superintendent Smith") to request Plaintiff's removal from the project site. (Def.'s St. of Mat. Facts, ¶ 17 (undisputed); Weiser Dep., at 39.) It is undisputed that Foreman Weiser informed Superintendent Smith that Plaintiff intentionally and maliciously removed the Fabrication:

> Weiser told [Superintendent Smith] that Plaintiff needed to be removed from the project because, "when it came down to impacting my job from doing a childish thing like that i.e., pulling down the [F]abrication, just for spite, no. I won't have that type of individual on my work crew. No, I won't do it."

---

[2] Plaintiff's removal of the pipe is undisputed. Plaintiff, however, challenges Defendant's statement of the facts that Plaintiff intended to disrupt the project. (Pl.'s Resp. to Def.'s St. of Mat. Facts, Doc. 37-2, ¶ 12.)

(Def.'s St. of Mat. Facts, ¶ 17 (undisputed) (quoting Weiser Dep., at 39).) Foreman Weiser testified that he believed Plaintiff's actions amounted to deliberate sabotage of the project, and therefore, Plaintiff's termination was necessary. (Weiser Dep., at 44.) Defendant terminated Plaintiff after Foreman Weiser informed Superintendent Smith of Plaintiff's actions. (Def.'s St of Mat. Facts, ¶ 18 (undisputed); Pl.'s St. of Mat. Facts, ¶ 31 (undisputed).) The Parties agree that, throughout Plaintiff's time working under Foreman Weiser, Foreman Weiser "never made any racially derogatory remarks, comments or statement[s] to or about Plaintiff, or in Plaintiff's presence." (Def.'s St. of Mat. Facts, ¶ 23 (undisputed).)

Plaintiff recalls the June 9, 2016 events differently. He maintains that he informed Foreman Weiser that he removed the piping because he did not want it to fall and he mistakenly brought the piece to the first floor with the rest of his tools. (Muniz Dep., at 82–83.) Plaintiff recounts that Foreman Weiser looked at him "funny" and then left. (Id.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could "affect the outcome of the suit under the

governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must "draw all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials in the record, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Because the standard for summary judgment mirrors that of a directed verdict, the initial burden of proof required by either party depends on who carries the burden of proof at trial. Id. at 322-23. When the movant does not carry the burden of proof at trial, it may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir.

1991) (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970); <u>Celotex Corp.</u>, 477 U.S. 317). The movant cannot meet its initial burden by merely declaring that the non-moving party cannot meet its burden at trial. <u>Id.</u> at 608.

If — and only if — the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." <u>Id.</u> When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden. For example, if the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1116 (11th Cir. 1993). On the other hand, if the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." <u>Id.</u> at 1116-17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. <u>See</u> <u>Morris v. Ross</u>, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule

of Civil Procedure 56. In reaching its conclusions herein, the Court has evaluated the Parties' briefs, other submissions, and the evidentiary record in this case.

### III. DISCUSSION

Plaintiff's complaint alleges discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. Defendant moves for summary judgment as to all claims. The Court addresses each below.

#### A. Title VII Discrimination – National Origin

Plaintiff checked the box in the complaint alleging "Defendant[] discriminated against me based on my . . . national origin." (Compl., Doc. 1, at 4.) Defendant argues it is entitled to summary judgment on Plaintiff's national origin discrimination claim because Plaintiff failed to exhaust administrative remedies as to that specific claim. (Br. Supp. Mot. for Summ. J., Doc. 33-1, at 5-7.) Plaintiff did not respond to Defendant's argument in his opposition brief; therefore, he arguably abandoned this claim. See Horton v. Delta Air Lines, Inc., No. 1:07-cv-1069-WSD-LTW, 2008 WL 11320065, at *2 n.3 (N.D. Ga. Aug. 15, 2008) (citing Iraola & CIA, S.A. v. Kimberly-Clark Corp., 325 F.3d 1274, 1284 (11th Cir. 2003); Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1322 (11th Cir. 2001)); Blankenship v. City of Russellville, No. CV-07-J-0740-IPJ, 2008 WL 11379948, at *3 (N.D. Ala. Apr. 7, 2008) (finding

claim abandoned in part because the plaintiff failed to respond to the defendant's summary judgment arguments as to that claim).

Even assuming Plaintiff did not intend to abandon the claim, dismissal is proper as to the asserted national origin discrimination claim.[3] First, in Plaintiff's Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Plaintiff checked boxes for discrimination based on race and color but failed to check the box for national origin. (EEOC Charge of Discrimination, Doc. 33-6.) The EEOC confirmed, and Plaintiff does not dispute, that the EEOC charge was limited to discrimination based upon race, color, and retaliation. (EEOC Letter Dated Apr. 3, 2017, Doc. 33-7; Def.'s St. of Mat. Facts, ¶ 22 (undisputed).)

"Prior to filing a Title VII action, . . . a plaintiff first must file a charge of discrimination with the EEOC." Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004) (per curiam). Despite the exhaustion requirement, "[a]s long as allegations in the judicial complaint and proof are reasonably related," such as "[j]udicial claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints," the claims

---

[3] Although Defendant raises the argument in its summary judgment motion, dismissal is the proper resolution of Plaintiff's national origin discrimination claim in the event Plaintiff failed to exhaust administrative remedies. "Exhaustion of administrative remedies is a matter in abatement that should be raised in a motion to dismiss, or treated as such if raised in a motion for summary judgment." Duble v. FedEx Ground Package Sys., 572 F. App'x 889, 892 (11th Cir. 2014) (citing Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008)).

are appropriate. <u>Wu v. Thomas</u>, 863 F.2d 1543, 1547 (11th Cir. 1989) (internal punctuation omitted).

Here, Defendant showed Plaintiff failed to exhaust administrative remedies as to his national origin claim. Plaintiff failed to respond. Therefore, dismissal is proper as to Plaintiff's claim for national origin discrimination.

## B. Plaintiff's Remaining Claims: Discrimination and Retaliation

Summary judgment as to Plaintiff's remaining claims is more vigorously contested. First, Plaintiff brings a claim for discrimination under Title VII based upon his race and color. Plaintiff's second claim is a Title VII retaliation claim. A plaintiff may establish either a discrimination or retaliation claim under Title VII using direct or circumstantial evidence. <u>Furcron v. Mail Ctrs. Plus, LLC</u>, 843 F.3d 1295, 1310 (11th Cir. 2016) (retaliation); <u>Schoenfeld v. Babbitt</u>, 168 F.3d 1257, 1266 (11th Cir. 1999) (discrimination).

"Direct evidence of discrimination is evidence, that, 'if believed, proves the existence of a fact in issue without inference or presumption.'" <u>Schoenfeld</u>, 168 F.3d at 1266 (quoting <u>Burrell v. Bd. of Trs. of Ga. Military Coll.</u>, 125 F.3d 1390, 1393 (11th Cir. 1997)). "Only the most blatant remarks, whose intent could be nothing other than to discriminate" qualify as direct evidence. <u>Id.</u> (quoting <u>Carter v. City of Miami</u>, 870 F.2d 578, 582 (11th Cir. 1989)).

Here, Plaintiff appears to concede the undisputed decision maker, Foreman Weiser, made no blatant discriminatory remarks that would constitute direct evidence. On its own review, the Court finds no direct evidence. For both discrimination and retaliation claims under Title VII, when a plaintiff relies solely on circumstantial evidence to support his claim, courts employ the burden shifting framework set forth in McDonnell Douglas Corp. v. Green. 411 U.S. 792, 802-04 (1973).

Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of the Title VII violation. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). "The burden of proving a prima facie case is not onerous." Watson v. Fort Worth Bank & Tr., 487 U.S. 977, 986 (1988) (citation and internal quotation marks omitted). Because the prima facie requirements for discrimination and retaliation differ, the Court analyzes the prima facie case for each claim separately. Success in establishing a prima facie case creates a rebuttable presumption that the employer acted illegally. McDonnell Douglas, 411 U.S. at 802. "The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the [termination]." Id. The employer's burden is an "exceedingly light" one of production, not persuasion, which means the employer "need only produce evidence that could allow a rational fact finder to conclude that [the plaintiff's] discharge was not made for a

discriminatory reason." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1331 (11th Cir. 1998); Meeks v. Comput. Assocs. Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994). If the employer meets this burden, the burden shifts back to the plaintiff who can only avoid summary judgment by presenting "significantly probative" evidence that the proffered reasons are pretextual. Young v. Gen. Foods Corp., 840 F.2d 825, 829 (11th Cir. 1988) (citation omitted).

## 1. Discrimination – Prima Facie Case

Title VII establishes that "[i]t shall be an unlawful employment practice for an employer – (1) . . . to discharge any individual . . . because of such individual's race [or] color." 42 U.S.C. § 2000e-2(a)(1). The Parties agree that, to establish a prima facie case of discrimination, Plaintiff must show that: "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class[4] or was treated less favorably than a similarly situated individual outside his protected class." Maynard v. Bd. of Regents of the Div. of Univs. of the Fla. Dep't of Educ., 342 F.3d 1281, 1289 (11th Cir. 2003).

---

[4] The record does not suggest — and Plaintiff does not assert — that someone outside of Plaintiff's protected class replaced him. Therefore, the only issue regarding the fourth element is whether Plaintiff was treated less favorably than a similarly situated individual outside of his protected class.

Three of the elements are uncontested: (1) Plaintiff is Hispanic, and therefore, a member of a protected class; (2) Plaintiff was terminated, which constitutes an adverse employment action; and (3) with many years of experience (Pl.'s St. of Mat. Facts, at ¶ 1 (undisputed)), Plaintiff was qualified for the job from which he was terminated. Defendant, however, argues that Plaintiff fails to establish a prima facie case because Plaintiff offers no evidence that similarly situated individuals outside of Plaintiff's protected class were treated differently. (Br. Supp. Mot. for Summ. J., at 10-11.) To establish the similarly situated element, Plaintiff asserts that Mr. Carlton and Mr. Parker were comparators and treated differently.[5]

The Eleventh Circuit recently held that "similarly situated" means that the plaintiff "and [his] comparators are similarly situated in all material respects." Lewis v. City of Union, 918 F.3d 1213, 1224 (11th Cir. 2019) (en banc) (internal punctuation omitted). Similarly situated in all material respects means that the comparator "will have 'engaged in the same basic conduct (or misconduct) as the plaintiff[;] will have been subject to the same employment policy, guideline, or rule as the plaintiff[;] will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff[;] and will

---

[5] The Parties do not dispute that Mr. Carlton and Mr. Parker, as African-Americans, are outside of Plaintiff's protected class.

14

share the plaintiff's employment or disciplinary history." McQueen v. Ala. Dep't of Transp., 769 F. App'x 816, 821-22 (11th Cir. 2019) (per curiam) (quoting Lewis, 918 F.3d at 1227-28).

The issue turns to whether Mr. Carlton and Mr. Parker are proper comparators. First, in terms of similar conduct, the verbal altercations between Plaintiff, Mr. Carlton, and Mr. Parker are not considered. The Parties agree that two disputes between the three employees occurred on June 8, 2018. Following the incidents, the decision was made — not for the purpose of punishment — to move Plaintiff from the second floor to the first floor. These undisputed facts fail to serve as evidence of disparate treatment of similarly situated individuals sufficient to satisfy the prima facie requirement.

Instead, Plaintiff points to the underlying occurrences leading to the verbal altercations as the comparator conduct. First, Plaintiff argues that Mr. Carlton "deliberately sabotaged a pipe weld made by [Plaintiff]." (Opp'n Mot. for Summ. J., Doc. 37, at 2, 6-7, 10-11.) Second, Plaintiff compares Plaintiff's conduct to Mr. Parker hitting Plaintiff's ladder with a vacuum cleaner. (Id.)

Both Defendant and Plaintiff point to sabotage as the conduct material to Plaintiff's termination, and therefore, the comparative sabotage must be analyzed. Additionally, Defendant asserts it terminated Plaintiff due to intentional sabotage. Upon

reviewing the relevant alleged conduct, Mr. Parker is not a proper comparator. Disregarding the disputed intent of the ladder incident, Mr. Parker did not cause any harm to the actual job site, a primary reason of Plaintiff's termination. Accordingly, Plaintiff's conduct and Mr. Parker's conduct is not sufficiently similar. The Court concludes, however, regardless of the intent of the two acts, Mr. Carlton's removal of the cap on the pipe weld resulting in the "burning up" of the pipe is the same basic conduct for the purpose of establishing the similarly situated prong of Plaintiff's prima facie case. Although Foreman Weiser asserts Plaintiff subsequently chose not to repair the issue when asked to do so, and Mr. Carlton expressed no similar disregard for Foreman Weiser's directives, making the conduct issue a close one, the Court assumes that Plaintiff and Mr. Parker's conduct is objectively similarly situated for the purpose of satisfying Plaintiff's prima facie burden.

### 2. Retaliation – Prima Facie Case

Defendant further contends that Plaintiff fails to show a prima facie case for retaliation. Pursuant to Title VII, "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a). Plaintiff's prima facie case for retaliation requires that: (1) "[he] engaged in an activity protected under Title VII"; (2)

"[he] suffered an adverse employment action"; and (3) "there was a causal connection between the protected activity and the adverse employment action." Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008).

Defendant does not contest, at this stage, that Plaintiff establishes that he suffered an adverse employment action and a causal connection between the alleged protected activity and the adverse employment action. At first, Defendant argued that Plaintiff engaged in no statutorily protected activity. (Br. Supp. Mot. for Summ. J., at 23.) Plaintiff responded with citations to Plaintiff's testimony stating that Foreman Weiser knew of racial slurs and altercations but did nothing to stop them. (Opp'n Mot. for Summ. J., at 8.) In essence, Plaintiff claims that the alleged racial slurs and intimidating comments Mr. Parker and Mr. Carlton made to him created a hostile or abusive work environment. Thus, Plaintiff's complaints to Foreman Weiser about the conduct is protected.

"To establish that a workplace constitutes a 'hostile work environment,' a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Rojas v. Florida, 285 F.3d 1339, 1344 (11th Cir. 2002) (per curiam) (quoting Harris v. Forklift Sys., Inc., 510

U.S. 17, 21 (1993)). The Court, however, need not decide whether Plaintiff's testimony regarding colleagues' conduct satisfies this requirement.[6] In its reply brief, Defendant elected not to battle on this field, and instead, decided to stand on its position that Plaintiff cannot demonstrate Defendant's reasons for terminating Plaintiff were pretextual. (Reply Br. Supp. Mot. for Summ. J., Doc. 39, at 15.) Accordingly, the Court assumes Plaintiff meets its low prima facie burden.

### 3. Legitimate, Nondiscriminatory Reason

Shifting the burden, Defendant cites Plaintiff's sabotage and defiance as legitimate reasons for his termination. (Br. Supp. Mot. for Summ. J., at 12–13; Reply Br. Supp. Mot. for Summ. J., at 10–11.) "To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997) (emphasis omitted) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 257 (1981)). Defendant satisfies its burden of production. The record contains evidence that Foreman Weiser believed Plaintiff intentionally removed the Fabrication and refused to repair it. Those actions are sufficient to motivate a reasonable employer to

---

[6] Defendant offers substantial evidence establishing that Plaintiff, at a minimum, contributed to workplace tension. At the summary judgment stage, though, the Court refrains from weighing competing evidence on this issue.

terminate. See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1088 (11th Cir. 2004). As such, the burden shifts back to Plaintiff to establish the proffered reasons were pretextual.

4. Pretext

To survive summary judgment, Plaintiff must show that Defendant's proffered reasons were pretextual. Plaintiff fails to meet this burden. The burden requires "sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action" by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Cooper v. S. Co., 390 F.3d 695, 725 (11th Cir. 2004) (citation omitted), overruled, in part, on other grounds, Ash v. Tyson Foods, Inc., 546 U.S. 454 (2006); Combs, 106 F.3d at 1538. "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [his] business judgment for that of the employer." Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1265 (11th Cir. 2010) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc)). If the employer satisfies the intermediate burden, "an employee must meet that reason head on and rebut it, and [he] cannot succeed by simply

quarreling with the wisdom of that reason." Id. at 1265-66 (quoting Chapman, 229 F.3d at 1030).

Plaintiff has not met Defendant's proffered legitimate reason head on. Attempting to show pretext, Plaintiff argues (1) that Plaintiff believed his act of sabotage to be a mistake and (2) the similar conduct of Mr. Carlton and Mr. Parker evidences pretext. (Opp'n Mot. for Summ. J., at 10-11.) As to the former, Plaintiff's view of his removal of the Fabrication as a mistake or necessary is inconsequential to the issue of pretext. Likewise, how Plaintiff believes Foreman Weiser could or should have perceived the actions of Mr. Carlton and Mr. Parker is inappropriate for consideration on the pretext issue. The issue is how Foreman Weiser, in fact, perceived the relevant conduct.

### a. *Plaintiff's Conduct*

The evidence is that Foreman Weiser believed Plaintiff's removal of the Fabrication was intentional sabotage of the project and his failure to repair his damage was subversion. Plaintiff has not shown inconsistencies or implausibilities in Foreman Weiser's reason for termination, instead he argues that Foreman Weiser should have viewed the situation differently.

"The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." Alvarez, 610 F.3d at 1266. Courts are not in the business of

second-guessing an employer's business decision or the wisdom of that decision. Id. "That is true 'no matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers.'" Id. (quoting Chapman, 229 F.3d at 1030). Thus, there is no requirement that Foreman Weiser correctly analyzed Plaintiff's conduct before terminating Plaintiff. To that end, the Eleventh Circuit has repeatedly and recently stated "that an 'employer need not have good cause for its decisions'" and "may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for an unlawful reason." Jefferson v. Sewon Am., Inc., 891 F.3d 911, 924 (11th Cir. 2018) (quoting Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984)).

Therefore, Plaintiff's burden is not to question whether the action itself justified termination but to present evidence creating an issue of fact as to the truth that the action was the reason for the termination. See Oliver v. TECO Energy, Inc., No. 8:12-cv-2117-T-33TBM, 2013 WL 6836421, at *8 (M.D. Fla. Dec. 26, 2013) ("[I]t is not the [p]laintiff's belief that controls, but whether the [d]efendant believed that the [p]laintiff had engaged in the behavior for which it took action."). The correct questions — questions that Plaintiff fails to properly confront — are whether Defendant believed Plaintiff was guilty of sabotage and subversion

21

and whether Plaintiff was actually terminated for those stated reasons.  See Elron v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991).  Plaintiff does not succeed in creating an issue of fact as to pretext by arguing about whether Foreman Weiser's interpretation of Plaintiff's conduct was correct.  The Court concludes that Plaintiff's quarreling regarding the justification for Foreman Weiser's interpretation of Plaintiff's conduct is insufficient to create a fact issue regarding pretext.  Thus, the Court turns to Plaintiff's similarly situated argument.

   b. *Comparator Conduct*

Plaintiff advances the argument that Plaintiff and Mr. Carlton engaged in similar conduct, yet Defendant only terminated Plaintiff.  Thus, Defendant's reason for terminating Plaintiff was pretext for discrimination.  In support, Plaintiff invokes Winborn v. Supreme Beverage Co., 572 F. App'x 672 (11th Cir. 2014) (per curiam).  Winborn states, "[T]he employee can 'prove pretext by showing either that she did not violate the work rule or that, if [he] did, other employees not within the protected class who engaged in similar acts were not similarly treated."  572 F. App'x at 675.  In light of the recent holding in Lewis, however, Plaintiff's position is unsuccessful.

The recent Lewis decision, in addition to the proper standard for comparators as noted in Section III(B)(1), *supra*, addressed when a comparator-evidence analysis is properly analyzed within

22

the McDonnell Douglas framework. 918 F.3d at 1221. The Eleventh Circuit held that a comparator-evidence analysis is correctly analyzed within the first step of the McDonnell Douglas framework — the prima facie stage. Id. at 1223-24. Of course, Lewis does not foreclose precedent, of the type Plaintiff cites, permitting the evaluation of evidence presented at the prima facie stage on the issue of pretext. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) ("[A]lthough the presumption of discrimination drops out of the picture once the defendant meets its burden of production, . . . the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom on the issue of whether defendant's explanation is pretextual.") (internal citations and quotation marks omitted). But, a plaintiff is not permitted to rest on his prima facie case laurels at the pretext stage. The Eleventh Circuit requires something more:

> At one time under this Circuit's law, [a plaintiff] could have gotten his claims before a jury after making a prima facie case and merely contradicting the [defendant]'s proffered legitimate, nondiscriminatory reason. . . . Intervening precedent has since closed this avenue for Title VII plaintiffs. Contradicting the [defendant]'s asserted reason alone, though doing so is highly suggestive of pretext, no longer supports an inference of unlawful discrimination. . . . The burden placed on Title VII plaintiffs to produce *additional* evidence suggesting discrimination after contradicting their employer's stated reasons is not great, but neither is it nothing.

<u>Flowers v. Troup Cty., Ga. Sch. Dist.</u>, 803 F.3d 1327, 1339 (11th Cir. 2015) (emphasis added) (citations omitted).

In sum, comparator evidence is properly considered at the prima facie stage, and prima facie evidence may be considered at the pretext stage, but evidence sufficient to make out a prima facie case alone is insufficient to survive summary judgment. Therefore, at a minimum, at the pretext stage, a plaintiff must put forth evidence the employer subjectively believed the comparators in question were similarly situated and treated them differently. "Treating *different* cases differently is not discriminatory, let alone intentionally so. See <u>Nix</u> . . . , 738 F.2d [at] 1186 . . . ('If an employer applies a rule differently to people *it believes are differently situated*, no discriminatory intent has been shown.')."[7] <u>Lewis</u>, 918 F.3d at 1222–23 (emphasis expanded). This reasoning aligns with traditional pretextual analysis. Plaintiff's burden at this stage is to put forth sufficient evidence that a factfinder could find the defendant's

---

[7] The Court recognizes that <u>Lewis</u> cites <u>Nix</u> favorably in its analysis of what makes out a prima facie case for discrimination. Therefore, <u>Lewis</u> could be interpreted to require this subjective comparator analysis at the prima facie stage. Later in the <u>Lewis</u> decision, the Eleventh Circuit set forth "same basic conduct" as a factor in determining whether comparators were similarly situated in all material respects at the prima facie stage. <u>Lewis</u>, 918 F.3d at 1227. The analysis establishing similarly situated in all material respects, however, does not expressly include a subjective analysis of the decision maker. Should the prima facie case require analysis of the employer's subjective belief regarding similarly situated comparators, Plaintiff fails to meet its prima facie burden of establishing discrimination in this case, and Defendant would be entitled to summary judgment on Plaintiff's discrimination claim for that reason.

non-discriminatory reason "unworthy of credence." <u>Alvarez</u>, 610 F.3d at 1265 (citation omitted). Therefore, in the same way that, to survive summary judgment, a plaintiff must offer evidence showing a defendant's legitimate, nondiscriminatory reason is not entitled to credence; when a plaintiff relies on comparator evidence, it must show that the defendant's belief that different individuals are not similarly situated is not entitled to credence.

Turning to the facts at hand, Plaintiff does not attempt to make such a showing. Plaintiff argues, without authority, "Weiser's conclusion that one committed sabotage and the other did not is irrelevant. What matters is that, based on Weiser's actual knowledge at the time, a reasonable jury could conclude that Muniz and Carlton engaged in similar conduct — and yet only Muniz was punished." (Opp'n Mot. for Summ. J., at 11.) As noted above, however, the decision maker's, Foreman Weiser, conclusion that the two comparators were not similarly situated is directly at issue.[8] The issue turns on the employer's beliefs. <u>Alvarez</u>, 610 F.3d at 1266.

Defendant offers evidence that it believed Plaintiff intentionally sabotaged the project site, believed Plaintiff

---

[8] In <u>Winborn</u>, cited by Plaintiff, the Court stated, "When considering whether an employee's termination based on alleged misconduct was merely a pretext, the proper inquiry is whether the employer believed that the employee was guilty of misconduct and whether that belief was the reason for the employee's discharge." 572 F. App'x at 675 (citing <u>Elrod v. Sears, Roebuck & Co.</u>, 939 F.2d 1466, 1470 (11th Cir. 1991)).

refused to correct the problem, and terminated Plaintiff for those reasons. Plaintiff argues that Mr. Carlton's conduct, in removing the cap causing Plaintiff's weld to "burn up" constituted similar conduct. As such, terminating Plaintiff but not Mr. Carlton creates a sufficient inference of discrimination for a jury.

Plaintiff's position, however, is not a "head on" attack of Defendant's belief. Defendant shows that Foreman Weiser believed Plaintiff's conduct was intentional and his refusal to repair the problem was open defiance to a supervisor. On the other hand, Defendant shows that it believed Mr. Carlton's actions were an accident, that he immediately offered to repair his mistake, and that he did not exhibit the same defiance in the face of a superior's direction. As a result, it is undisputed that, from Defendant's perspective, Plaintiff and Mr. Carlton were not similarly situated. Plaintiff offers no evidence that Defendant's belief was not genuinely-held. As with Defendant's view of Plaintiff's conduct discussed in Section III(B)(4)(a), *supra*, Plaintiff must offer evidence that Defendant viewed Mr. Carlton and Plaintiff as similarly situated and, despite this perspective, treated them differently. For the reasons set forth herein, Plaintiff's questioning of the accuracy of Defendant's belief is inadequate to meet his burden to show Defendant's reasoning was pretextual and survive summary judgment.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's motion for summary judgment (Doc. 33) on all but Plaintiff's national origin discrimination and retaliation claims. The Court **DISMISSES** Plaintiff's national origin discrimination and retaliation claims for failure to exhaust administrative remedies. Accordingly, the Clerk is directed to **ENTER JUDGMENT** in favor of Defendant on all of Plaintiff's claims, **TERMINATE** all other pending motions, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this ___16ᵗʰ___ day of September, 2019.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA